Good morning. May it please the Court, my name is Stuart Flinsky. You have three cases this week? Three cases this week. Three cases in two days. That is correct, Your Honor. That's a full load. Go right ahead. Counselor, are you ready? I represent the Petitioner Delia Ramos-Bona, who is the wife of a U.S. citizen, Chief Petty Officer Ronald Bona, who is now a 19-year veteran of the U.S. Navy, and also the mother of their two Philippine-born children, who the government has admitted to permanent residence and are now U.S. citizens. Who paid for the transportation of her and her children to the United States? The U.S. government. She came in via the military airlift command with the Mount Pinatubo evacuation in 1991. Why did they come to the United States? The U.S. Air Force brought her here. Now they want to kick her out. That is correct, Your Honor. Not because of what she did, but because of what they claim her husband did. Yes, Your Honor. That's what the record indicates. Has the government ever proceeded to revoke the husband's naturalization? No, Your Honor. They never sought to revoke her naturalization. Not her, him. I'm sorry. They never moved to revoke Chief Bona's naturalization. And even if they did, he could turn around tomorrow, and he would be eligible for Section 329 naturalization in service in both the Persian Gulf War and the war against terrorism, pursuant to Section 329 of the Act. They can't touch him. It would be a void act. Is there any suggestion in the record that she participated in any way in his preparation of his initial naturalization application? No, Your Honor. And any fraud he may have committed? Was there any adjudication, administratively or legally, that he committed an illegal act? No. Our argument is very simple, is that based upon her status, the law permits her the opportunity to apply for multiple forms of relief. The Board has said our reliance on the law is misplaced. We simply ask that the Board be instructed to follow the law. Okay. Let's hear from the government. May it please the Court, my name is Jennifer Paisner on behalf of Attorney General Gonzales. Good morning. And that is the first time I have said that. I'd like to start by clarifying the status of this case. Mrs. Bona was paroled into the country in 1991. The government did pay for it. It was due to the explosion, as I understand it, of a volcano in the Philippines. When she was paroled into the United States, she was given the opportunity to apply for adjustment of status before the district director of the INS. That application was denied. Her parole was then revoked in 1991. So from 1991 until she was placed in removal proceedings in 1999, she was here with no status whatsoever. The basis for the denial was the government took the position that her husband had obtained naturalization fraudulently? I believe it was, but none of that is at issue in her removal proceedings. Can you understand why at least some of us up here find that a little curious? I do, but most of that isn't in the record. Excuse me. Let me finish. The government is relying upon a, quote, established fact that they've never pursued, never adjudicated, and apparently have no intention of ever pursuing because it would be futile for the reasons counsel indicated. I'm not quite sure I understand that. I'm not quite sure that's the basis of her being placed into removal proceedings has to do with the fact that she was inadmissible when she arrived because she had no papers. Her parole had been revoked. What happened with the adjustment of status application was simply that it was denied by the INS district director, and that was the end of it. I don't believe the denial of the adjustment of status application. When was she told that she had entered the United States unlawfully?  Certainly when the parole was revoked. When they put her on a U.S. Air Force transport and brought her to the continental United States, did they tell her that before she got on the plane? I don't know. None of that is in the record. Did they tell her that when she arrived? Again, none of that is in the record, but she doesn't dispute. We don't know when she was told that. We don't, but she has admitted all along that she is an inadmissible alien. She admitted during the proceedings before the immigration judge that under 212A7A1, I believe that's the provision under which she was found inadmissible, but she admitted that she arrived without an entry visa or any other valid documents.  Well, when her parole was revoked in 19- No, I mean when she was first brought over. Could she have elected to have stayed in the Philippines? I don't know the answer to that either, Your Honor. I don't believe that's in the administrative record either. Well, it doesn't sound to me that she would have because they were removing all of the families of the service people in the Philippines because of the eruption of Mount Pinjubo. I understand that, but it's important to clarify that she never denied that she was inadmissible. She's admitted that. Her only argument- She didn't understand her status. That's the problem. No, in 1999, in her removal proceedings, when she was represented by counsel- Was she here legally or illegally? She was here illegally. She was here legally. No, she wasn't here legally. They brought her here. And then revoked her. They brought her here. They granted her parole. She applied for- If the government brings her here, isn't she here legally? But her parole was revoked. She had an opportunity to adjust her status. Just bringing her here is not legal? Her parole was then revoked in 1991 after her application for adjustment of status was denied. I think we've got your argument clear on that. Your opposing counsel cited in a 28-J letter about a month ago two First Circuit cases. I think they're both written by Judge Lynch, Sukar and Rodriguez de Rivera. Why shouldn't we adopt that reasoning? Well, there are a couple of reasons. First of all, she has never claimed- She claimed that she wasn't an arriving alien because she didn't fit within the definition of an arriving alien. She clearly does. She never claimed that the- Because the government was relying upon her counsel's statement at the hearing that she was an arriving alien. She also, if you look- That is true. That's correct, right? She also falls within the definition of an arriving alien at 8 CFR 1.1Q. And I can discuss that, but my further argument- The heart of these two decisions from the First Circuit is that that regulation is inconsistent with the statute. That's right. What's your response to that? The response is that both of those cases dealt with aliens who were currently under a grant of parole. And if you read those decisions, they are focused solely on the regulation as it applies to aliens who are in parole. She, and the record makes clear, her parole was revoked in 1991. She was placed into removal proceedings in 1999. She was an arriving alien when she was placed into removal proceedings. She was not an arriving alien who was in a parole status. And that's important because the First Circuit's decisions rely entirely on the fact that the aliens in those cases were in parole. And that the statute at issue, the Adjustment of Status Statute 245, specifically mentions paroled aliens. And that was the basis. Does it bother you at all that the family of a 19-year serviceman brought over to the United States at the request of the United States and left here for eight years and now all of a sudden is being removed? With what I think is a very strange thing at least, the children apparently are nationalized citizens, right? I believe so, although if counsel says they are. And that may be in the record, although I'm not sure where it is. I think it's important to reiterate that she was brought in for a very limited amount of time because of an event in the Philippines, the eruption of a volcano. While she was here in 1991, she received her visa petition. She applied for Adjustment of Status. That was denied. And the denial is not at issue before this Court. It's not at issue in these proceedings. It was a denial. Eight years ago. Right. And then her parole was revoked. So presumably what she should have done was to go back to the Philippines. But she didn't. She stayed here illegally. And yes, in 1999. No action was taken by the government to remove her for eight years. That's true, and I don't know why. The decision to institute removal proceedings is in the absolute discretion of the INS. There's no indication in the record why in 1999 she was finally placed in removal proceedings. Hard exercise of discretion, don't you think? Well, this is an area where the Attorney General has absolute discretion. And in any event, there have been no allegations as to the timing of her being placed in removal proceedings. And so the fact that she was here for eight years with no legal status to be here, when presumably the reason she was removed from the Philippines in the first place had disappeared and her parole had been revoked in 1991. So she had eight years to go back, and she didn't. I think we understand your argument. Thank you. Thank you. Thank you for your argument. Counsel? Several comments. One, on Sukar and Rivera, Section 245, which I believe is 8 U.S.C. 1255, doesn't say an alien who is in parole status as an alien who has been paroled. There's a D on it, past tense. So you remain eligible if you were inspected, which she was, and paroled, which she was. The expiration of it makes no difference. Also, the other thing that I find curious is everyone's talking that Ms. Bona is here. I don't know if that's established. She was paroled in in 1991. Everyone agrees. Now, the Board of Immigration Appeals, on page one of the decision, treats her as an arriving alien, a parolee who notionally isn't here. On page two, we applied, okay, she's not here. She's an applicant at the border. You have the authority to waive nonimmigrant visas. Congress made the K-3 visa available. What does the BIA then do? Totally inconsistent with the previous page, they say she's not an alien who's departed the United States. I would submit either she's here or she's not. And we have two rulings in the same decision from the BIA. Okay. Thank you. Let me ask government counsel, would you like an opportunity to respond in writing about Sukar and Rodriguez? If this court- I'm asking you. We're affording you the opportunity to comment in writing on the applicability of those two cases to these facts, if the government wishes. We do. What we'd also wish, though, is supplemental briefing on both sides, because this issue was never raised in this case, and- That's why I asked. Yes. Okay. We would, thank you. Thank you, counsel. Thank you. There'll be an order for simultaneous briefs, and you'll see it periodically. Do you have any more cases, or are you done? I'm done. Okay. Thank you both. Your Honor, I don't know if it's appropriate, but I believe there may be an interest from amicus. Should I inform the interested parties on that? Talk with your counsel. Case just argued is submitted for decision. We'll proceed next to United States against Tolerant. Counsel present? Yes. Thank you. Now, can we adjust that? Good morning, Your Honors. Good morning. My name is William Braniff, and I do represent the appellant, defendant, Roberts,    Thank you.
judges: Hug, Ferguson, Hawkins